JOHN BRENT FROST AND CAROLYN FROST AND PERSONS SIMILARLY SITUATED v. MAZDA MOTOR OF AMERICA, INC.; MAZDA MOTORS OF AMERICA (EAST), INC.; PRIMUS AUTOMOTIVE FINANCIAL SERVICES, INC. D/B/A MAZDA AMERICAN CREDIT; AL SMITH BUICK CO., INC., A NORTH CAROLINA CORPORATION D/B/A AL SMITH BUICK DODGE MAZDA; AUTOMOBILES OF ASHEBORO, INC., A NORTH CAROLINA CORPORATION D/B/A ASHEBORO HONDA MAZDA; BOB KING, INC., A NORTH CAROLINA CORPORATION D/B/A BOB KING MAZDA KIA; BURLINGTON LINCOLN-MERCURY LEASING CORPORATION, A NORTH CAROLINA CORPORATION D/B/A BURLINGTON LINCOLN MERCURY/BILL INGOLD MAZDA; CITY MOTORS, INC., A NORTH CAROLINA CORPORATION T/A CITY MOTORS; CHARLES FISHER, INC., A NORTH CAROLINA CORPORATION D/B/A FISHER MAZDA; FREMA MOTORS, INC., A NORTH CAROLINA CORPORATION T/A FREMA MOTORS; GRANT BUICK, INC., A NORTH CAROLINA CORPORATION T/A GRANT BUICK MAZDA; DIEFFENBACH CHEVROLET-BUICK, INC., A NORTH CAROLINA CORPORATION D/B/A HANK DIEFFENBACH MAZDA; HENDRICK MANAGEMENT CORPORATION, A NORTH CAROLINA CORPORATION D/B/A HENDRICK MAZDA; HOLIDAY CARS, INC., A NORTH CAROLINA CORPORATION D/B/A HOLIDAY CHRYSLER PLYMOUTH MAZDA; HOWELL BUICK, INC., A NORTH CAROLINA CORPORATION

**FROST v. MAZDA MOTORS OF AM., INC.**

[353 N.C. 188 (2000)]

D/B/A HOWELL BUICK MAZDA; SPORTS AND IMPORTS OF HICKORY, INC., A NORTH CAROLINA CORPORATION D/B/A ROBERTS MAZDA MITSUBISHI OR SPORTS AND IMPORTS, INC.; A NORTH CAROLINA CORPORATION D/B/A ROBERTS MAZDA; SKY COUNTRY NISSAN, INC., A NORTH CAROLINA CORPORATION D/B/A SKY COUNTRY NISSAN MAZDA; SONNY HANCOCK CHEVROLET, INC., A NORTH CAROLINA CORPORATION D/B/A SONNY HANCOCK MAZDA; HMMC, INC., A NORTH CAROLINA CORPORATION D/B/A VESTER HONDA, VESTER MAZDA OF WILSON AND VESTER HONDA-MAZDA; CABARRUS AUTO INVESTORS COMPANY, A NORTH CAROLINA LIMITED PARTNERSHIP, D/B/A MAZDA OF CONCORD; ALCOKE AUTO CENTER LLC, A NORTH CAROLINA CORPORATION D/B/A NEW BERN PONTIAC MAZDA; SALISBURY LINCOLN-MERCURY, INC., A NORTH CAROLINA CORPORATION D/B/A SALISBURY LINCOLN MERCURY MAZDA; C&S MOTOR COMPANY, INC., A NORTH CAROLINA CORPORATION D/B/A LOUGHLIN AUTOMOTIVES; LOUIS F. HARRELSON, INC., A NORTH CAROLINA CORPORATION D/B/A HARRELSON MAZDA; CHARLES MONTGOMERY MOTORS, INC., A NORTH CAROLINA CORPORATION D/B/A MONTGOMERY MAZDA; PARKS AUTOMOTIVE, INC., A NORTH CAROLINA CORPORATION D/B/A PARKS MAZDA; W.R. WILLIAMSON, INC., A NORTH CAROLINA CORPORATION D/B/A WILLIAMSON MAZDA

No. 582PA99

(Filed 21 December 2000)

## 1. Appeal and Error— interlocutory appeals—certification of class

In an action arising from an undisclosed fee charged in the purchase of a leased car, no substantial right was involved in the trial court's determination that the case met the prerequisites for a class action, and the general rule disallowing interlocutory appeals of such orders applied. No case allowing class certification has been held to affect a substantial right such that an interlocutory appeal would be permitted.

## 2. Class Actions— notification of class—cost to defendant

In a class action arising from an undisclosed fee charged in the purchase of a leased automobile, the question of whether a trial court abused its discretion by ordering that defendant assume the onus of identifying and sending notice to the class was interlocutory, but was heard on appeal because the question is important to all class actions. The usual rule is that a plaintiff must bear the cost of notice to the class, but exceptions exist and the touchstone is to honor the broad discretion allowed the trial court in all matters pertaining to class certification. There was no abuse of discretion here given the nearly negligible estimated cost of the notice and the court's articulated reason for shifting the cost to defendant (defendant's unique control over the identities of the class members).

FROST v. MAZDA MOTORS OF AM., INC.

[353 N.C. 188 (2000)]

On writ of certiorari pursuant to N.C.G.S. § 7A-32(b) to review an order allowing class certification entered 19 May 1999 by Carter (Clarence W.), J., in Superior Court, Forsyth County, and the Court of Appeals' 6 December 1999 order dismissing the action. Heard in the Supreme Court 12 September 2000.

*Wilson & Iseman, L.L.P., by Urs R. Gsteiger; Randolph M. James, P.C., by Randolph M. James, for plaintiff-appellees.*

*Poyner & Spruill, L.L.P., by David M. Barnes; and Sutherland Asbill & Brennan LLP, by Thomas M. Byrne, pro hac vice, for defendant-appellant Primus Automotive Financial Services, Inc.*

FREEMAN, Justice.

This is a class action lawsuit brought by named plaintiffs to recover a $158.50 fee charged by the Mazda dealership when plaintiffs exercised their option to buy their leased vehicle. Plaintiffs' lease agreement with the dealer (on a "Mazda American Credit" form) failed to disclose that any such fee would be charged in addition to the purchase-option price stated in the agreement.[1] The fee nevertheless appeared in a space designated "DEL. & HDLG." on the dealer's "Retail Buyer[']s Order and Invoice" executed by plaintiffs when they purchased the vehicle.

On 27 March 1998, plaintiffs filed an amended class action complaint against their Mazda dealer and, on behalf of all other lessee-purchasers of Mazda vehicles similarly situated between 1994 and 1998, against every Mazda dealer in North Carolina, two North American manufacturers of Mazdas, and PRIMUS (d/b/a Mazda American Credit). PRIMUS is a finance company that takes assignment of the lease from the dealer, buys the leased vehicle, and collects payments from the lessee. If the lessee ultimately chooses to buy the vehicle, PRIMUS sells the car back to the dealer, which then sells it to the lessee. Plaintiffs alleged their experience supported claims against all defendants of breach of contract, negligent misrepresentation, breach of warranty, fraud, and "unfair and deceptive trade practices." They further alleged that defendants' acts and omis-

---

1. The purchase option provision reads, in pertinent part:

"Purchase Option: The Lessee has the option to purchase the Vehicle at the end of the lease for $16[,]815.70. . . . Upon payment in cash of the purchase option price plus taxes, the Lessor shall deliver title to the Lessee."

**FROST v. MAZDA MOTORS OF AM., INC.**

[353 N.C. 188 (2000)]

sions, made knowingly or with willful and wanton disregard for plaintiffs' rights, supported an award of punitive damages.

The dealership defendants filed a motion to dismiss, which was granted to all but Bob King Mazda, the dealership from which plaintiffs leased, then purchased, their vehicle. Plaintiffs' claims against PRIMUS and the Mazda manufacturers remained extant.

Plaintiffs filed a notice of appeal of the dismissal, which they subsequently withdrew pursuant to a settlement agreement with all defendant dealerships, including Bob King Mazda. In accordance with the agreement's terms, plaintiffs also dismissed all claims against all dealership defendants.

This agreement was approved by a court order, which noted that the settlement included the dealerships' agreement to "pay plaintiffs' counsel the amount of $34,300.00 as reimbursement for part of the costs and attorneys' fees associated with the prosecution of this matter." In addition, in reciting plaintiffs' agreement to execute a tortfeasors' release of all (and only) the dealership defendants, the court stated it "makes no finding as to the adequacy or inadequacy of the Frosts as class representatives [and] makes no finding as to the legal effect of said release."

On 19 May 1999, the trial court granted plaintiffs' motion for class certification. The court found, *inter alia*, that a class of plaintiffs existed with an interest in the same issues of law and fact, including whether charging monies in addition to the purchase-option price plus taxes breached the lease, was an "unfair and deceptive practice" under chapter 75-1.1 of the North Carolina General Statutes, was fraudulent, and was sufficiently aggravated as to warrant the imposition of punitive damages. The court found that named plaintiffs would "fairly and adequately insure the representation of the interests of all class members," that "[t]here is no conflict of interest between the named plaintiffs and the class members," and that "named plaintiffs have a genuine personal interest in the outcome of the action." As to defendant PRIMUS, the court specifically found:

As part of the relief granted for plaintiffs' motion to compel, defendant PRIMUS has been ordered to list the name, address, and telephone number of all persons who are potential class members; to wit: those persons who entered a net closed[-]end lease with PRIMUS doing business as Mazda American Credit

FROST v. MAZDA MOTORS OF AM., INC.

[353 N.C. 188 (2000)]

which contained a purchase option similar to that in the representative plaintiffs' lease and were charged monies in addition to the purchase[-]option price plus taxes when they exercised their option to purchase. This information is uniquely within defendant PRIMUS' control but defendant PRIMUS withheld this information without objection and despite the fact that the parties had entered a consent confidentiality order. Under the circumstances the court finds it just and proper that defendant PRIMUS send the notice approved by the court to potential class members.

The court accordingly ordered PRIMUS to send the approved notice of the pending class action "to all potential class members by First Class United States Mail." The same day, the court entered an order on plaintiffs' motion to compel against PRIMUS, directing PRIMUS to answer designated interrogatories and produce certain named documents, but specifically deferring a ruling on plaintiffs' request for sanctions.

The Court of Appeals granted plaintiffs' motion to dismiss defendant PRIMUS' interlocutory appeal of the class certification order and dismissed as moot PRIMUS' petition for writ of certiorari. This Court granted PRIMUS' petitions for writs of certiorari and supersedeas, seeking a stay of the trial court's orders and review of the class certification order and the question whether under the circumstances of this case the order is immediately appealable.

[1] A class certification order is not a final judgment disposing of the cause as to all parties; the appeal of such orders is thus interlocutory. *See, e.g., Perry v. Cullipher*, 69 N.C. App. 761, 318 S.E.2d 354 (1984) (court order denying class certification does not determine the controversy and is interlocutory). There is no right of immediate appeal from an interlocutory order, *e.g., Travco Hotels, Inc. v. Piedmont Natural Gas Co.*, 332 N.C. 288, 292, 420 S.E.2d 426, 428 (1992); but such appeals are allowed if they involve a matter of law or legal inference that affects a substantial right of the appellant, N.C.G.S. §§ 1-277(a) (1999), 7A-27(d)(1); *e.g., Wachovia Realty Invs. v. Housing, Inc.*, 292 N.C. 93, 232 S.E.2d 667 (1977) (interlocutory order is appealable if it affects a substantial right and will work injury to appellants if not corrected before final judgment).

The "substantial right" test for appealability of interlocutory orders is that "the right itself must be substantial and the deprivation of that . . . right must potentially work injury . . . if not corrected before appeal from final judgment." *Goldston v. American Motors*

**FROST v. MAZDA MOTORS OF AM., INC.**

[353 N.C. 188 (2000)]

*Corp.*, 326 N.C. 723, 726, 392 S.E.2d 735, 736 (1990), *quoted in Travco*, 332 N.C. at 292, 420 S.E.2d at 428. The test is more easily stated than applied: "It is usually necessary to resolve the question in each case by considering the particular facts of that case and the procedural context in which the order from which appeal is sought was entered." *Waters v. Qualified Personnel, Inc.*, 294 N.C. 200, 208, 240 S.E.2d 338, 343 (1978).

The *denial* of class certification has been held to affect a substantial right because it determines the action as to the unnamed plaintiffs. *E.g., Perry v. Cullipher*, 69 N.C. App. at 762, 318 S.E.2d at 356 (if court errs in refusing to certify class action, named plaintiff may obtain judgment without other class members, but the latter will suffer an injury that cannot be corrected absent an appeal before final judgment); *see also Dublin v. UCR, Inc.*, 115 N.C. App. 209, 221, 444 S.E.2d 455, 462, *disc. rev. denied and appeal dismissed*, 337 N.C. 800, 449 S.E.2d 569 (1994).

Heretofore, however, no order *allowing* class certification has been held to similarly affect a substantial right such that interlocutory appeal would be permitted. In *Faulkenbury v. Teachers' & State Employees' Ret. Sys. of N.C.*, for example, the Court of Appeals granted certiorari to review an order granting class certification. The defendants contended the certification affected a substantial right because " 'trying this case as a class action . . . [would] be complex, expensive and time consuming,' and [would be] unduly burdensome on defendants given [the] contention that plaintiff Faulkenbury lack[ed] representative capacity" for the certified classes. 108 N.C. App. 357, 375, 424 S.E.2d 420, 429, *aff'd per curiam*, 335 N.C. 158, 436 S.E.2d 821 (1993). The Court of Appeals flatly disagreed. It noted generally the trial court's broad discretion in determining whether to certify a class action. *Id.* at 376, 424 S.E.2d at 430 (citing *Crow v. Citicorp Acceptance Co.*, 319 N.C. 274, 284, 354 S.E.2d 459, 466 (1987). It noted further that the trial court had made explicit findings as to the appropriateness of a class action according to criteria stated in *Crow* and reaffirmed the policy that "class actions are appropriate and should be permitted when they can 'serve useful purposes' such as preventing a multiplicity of suits or inconsistent results." *Id.* (quoting *Crow*, 319 N.C. at 284, 354 S.E.2d at 466). Finally, the court rejected the defendants' substantive contention that the named plaintiff was not sufficiently representative of the subclasses, observing that the class members were so numerous as to make individual actions impractical and a class action efficient and that the named

plaintiff's interest in the suit was "genuine and typical of the claims of the other class members." *Id.*

In this case, as in *Faulkenbury*, defendant challenges the class certification order on several grounds, among them that plaintiffs lack representative capacity for the class and that the class claims differ so greatly that they cannot be adjudicated as a class action. We conclude here as the Court of Appeals did in *Faulkenbury* that no substantial right is involved in a trial court's determination that a case meets the prerequisites to utilizing a class action as specified in *Crow*, and that the general rule disallowing interlocutory appeals of such orders applies.

**[2]** Defendant also contends, however, that the trial court's directing it to assume the onus of identifying class members and sending notice to the class "affects a substantial right" and that for this reason defendant is entitled to immediate appeal of the order. We disagree.

Because the cost of sending notice to plaintiff class in this case is estimated to be modest (less than $500.00), and because the assessment of such costs is reviewable upon appeal from a final judgment in this case, we fail to see how defendant's right not to bear these costs would be "lost or irremediably adversely affected," *Blackwelder v. State Dep't of Human Res.*, 60 N.C. App. 331, 335, 299 S.E.2d 777, 780 (1983), if the order is not immediately reviewed. "If appellant's rights 'would be fully and adequately protected by an exception to the order that could then be assigned as error on appeal after final judgment,' there is no right to an immediate appeal." *Howell v. Howell*, 89 N.C. App. 115, 116, 365 S.E.2d 181, 182 (1988) (quoting *Bailey v. Gooding*, 301 N.C. 205, 210, 270 S.E.2d 431, 434 (1980)).

Under uncomplicated circumstances such as these, in which a court's directive to pay modest fees or costs (or denying such requests) is part of an order that is not itself immediately appealable, but which directive, if protected by exception, may be reviewed after final judgment, no substantial right is involved. Like the order certifying plaintiff class of which it is part, the directive is thus not appealable before final judgment.[2] *See, e.g., State ex rel. Martin v. Sloan*, 69

---

2. We note that this issue would no more be immediately appealable as a "collateral matter" under the federal test for interlocutory appeals than it is under the substantial rights doctrine. It does not " '*finally determine* [appellants'] claims of right separable from, and collateral to, rights asserted in the action, too *important* to be denied review and too independent of the cause to require that appellate consideration be deferred until the whole case is adjudicated.' " *Eisen v. Carlisle & Jacquelin*, 417

**FROST v. MAZDA MOTORS OF AM., INC.**

[353 N.C. 188 (2000)]

N.C. 128 (1873) (the Supreme Court will not decide a case on the question of costs alone unless some substantial right is involved). Cases holding otherwise are distinguishable by the complexity or finality of their facts. *See e.g., Lowder v. All-Star Mills Inc.*, 309 N.C. 695, 309 S.E.2d 193 (1983) (interlocutory court order awarding fees to receivers' counsel appealable when employment of counsel by receivers held improper and counsel discharged before culmination of underlying action); *Wachovia Realty Invs. v. Housing, Inc.*, 292 N.C. 93, 232 S.E.2d 667 (premature summary judgment for balance due on note without considering issue of set-off or credit affected plaintiff's substantial right when execution entered on judgment and lien imposed on plaintiff's funds, but procedures to stay execution would involve substantial expense); *Waldo v. Wilson*, 177 N.C. 461, 100 S.E. 182 (1919) (when plaintiffs instigated unnecessary appeal, order taxing defendant with cost of copying transcript appealable); *Horner v. Oxford Water & Elec. Co.*, 156 N.C. 494, 72 S.E. 624 (1911) (ruling on motion to apportion costs reviewable when court lacked power); *May v. Darden*, 83 N.C. 237 (1880) (although general rule is that no appeal lies from a judgment for costs only, exception in favor of executors as fiduciaries makes decision in such cases one affecting substantial rights); *Miller v. Henderson*, 71 N.C. App. 366, 322 S.E.2d 594 (1984) (order granting request for attorneys' fees from dismissed defendants was substantially same as partial judgment against plaintiff for monetary sum and as such affected substantial right).

Nonetheless, because this question is important to all class actions, we granted certiorari and so exercise our supervisory powers over the courts of this state, N.C.G.S. § 7A-32(b) (1999), to address whether it is ever proper to direct a defendant to assume the onus and costs of notifying putative members of the plaintiff class.

---

U.S. 156, 171-72, 40 L. Ed. 2d 732, 744-45 (1974) (quoting *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 546, 93 L. Ed. 1528, 1536 (1949)) (emphasis added). Unlike the order at issue in *Eisen* or an interlocutory order granting a motion to disqualify counsel, *see Goldston*, 326 N.C. at 726, 392 S.E.2d at 736, this order is not "effectively unreviewable on appeal from a final judgment," *id.* at 727-28, 392 S.E.2d at 737; *accord Firestone Tire & Rubber Co. v. Risjord*, 449 U.S. 368, 375, 66 L. Ed. 2d 571, 579 (1981).

We note in addition that directing defendant to send notice to class plaintiffs, while stated as part of the certification order, was specifically "part of the relief granted for plaintiffs' motion to compel." As such, this directive could be viewed as having been imposed upon defendant as a discovery sanction authorized by Rule 37(b) of the North Carolina Rules of Civil Procedure. But a separate order on plaintiff's motion to compel issued the same day by the same judge, which specifically "deferred" ruling on plaintiffs' request for sanctions, makes it clear it was not.

**FROST v. MAZDA MOTORS OF AM., INC.**

[353 N.C. 188 (2000)]

This is a question of first impression in this jurisdiction. Our appellate courts have been careful to distinguish North Carolina's Rule 23 and its construction from its federal counterpart and commentary by federal courts. *See, e.g., Crow,* 319 N.C. at 279, 354 S.E.2d at 463 (assuming General Assembly rejected three additional subparagraphs of Rule 23 to simplify class actions and to provide greater flexibility); *Dublin,* 115 N.C. App. at 219, 444 S.E.2d at 461 (noting "substantial differences" between Rule 23 in North Carolina and its federal counterpart).[3] Nevertheless, our courts have been attentive to the interpretation of Rule 23 by the federal courts and have been guided by such interpretation when appropriate. *See, e.g., Gibbons v.*

---

3. N.C. R. Civ. P. 23 provides, in pertinent part:

Rule 23. Class actions.

    (a) Representation.—If persons constituting a class are so numerous as to make it impracticable to bring them all before the court, such of them, one or more, as will fairly insure the adequate representation of all may, on behalf of all, sue or be sued.

    . . . .

    (c) Dismissal or compromise.—A class action shall not be dismissed or compromised without the approval of the judge. In an action under this rule, notice of a proposed dismissal or compromise shall be given to all members of the class in such manner as the judge directs.

N.C.R. Civ. P. 23(a), (c). Analogous provisions of Fed. R. Civ. P. 23 provide:

    (a) Prerequisites to a Class Action. One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

    . . . .

    (e) Dismissal or Compromise. A class action shall not be dismissed or compromised without the approval of the court, and notice of the proposed dismissal or compromise shall be given to all members of the class in such manner as the court directs.

Fed. R. Civ. P. 23(a), (e). Subsection (f) of the federal rule explicitly permits the court of appeal to accept interlocutory appeal from an order of a district court granting or denying class action certification if application is made within ten days after entry of the order:

    A court of appeals may in its discretion permit an appeal from an order of a district court granting or denying class action certification under this rule if application is made to it within ten days after an entry of the order. An appeal does not stay proceedings in the district court unless the district judge or the court of appeals so orders.

Fed. R. Civ. P. 23(f) (1998).

## FROST v. MAZDA MOTORS OF AM., INC.

[353 N.C. 188 (2000)]

*CIT Grp./Sales Fin., Inc.*, 101 N.C. App. 502, 506, 400 S.E.2d 104, 106 (finding "persuasive" the logic of *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 68 L. Ed. 2d 693 (1981), regarding trial court's discretion to limit communication with potential class members under Fed. R. Civ. P. 23(d), which has no analogue in North Carolina's Rule 23), *disc. rev. denied*, 329 N.C. 496, 407 S.E.2d 856 (1991).

Rule 23 does not by its terms require notice to class members, but adequate notice is dictated by "fundamental fairness and due process." *Crow*, 319 N.C. at 283, 354 S.E.2d at 466 (citing *Eisen v. Carlisle & Jacquelin*, 391 F.2d 555, 564 (2d Cir. 1968)). "The actual manner and form of the notice is largely within the discretion of the trial court," but "the . . . court should require that the best notice practical under the circumstances should be given to class members . . . includ[ing] individual notice to all members who can be identified through reasonable efforts." *Id.* at 283-84, 354 S.E.2d at 466.

Neither North Carolina's Rule 23 nor Rule 23 of the Federal Rules of Civil Procedure designates which party should properly bear the burden of notifying class members. But the Supreme Court observed in *Eisen* that the "usual rule" in a case brought under Rule 23 "is that a plaintiff must initially bear the cost of notice to the class. . . . Where the relationship between the parties is truly adversary, the plaintiff must pay for the cost of notice as part of the ordinary burden of financing his own suit." 417 U.S. at 178, 40 L. Ed. 2d at 749; *see also Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 356, 57 L. Ed. 2d 253, 268 (1978) ("The general rule must be that the representative plaintiff should perform the tasks, for it is he who seeks to maintain the suit as a class action and to represent other members of his class."); Federal Judicial Center, *Manual for Complex Litigation* 227 (3d ed. 1995) ("[P]arties seeking class action must initially bear the cost of preparing and distributing the certification notice required by [Fed. R. Civ. P.,] 23(c)(2) and the expense of identifying the class members.").

Exceptions to this rule inevitably exist. Some federal courts have imposed the cost of notice as a sanction for defendants who demonstrate intransigence in discovery. *E.g.*, *Nagy v. Jostens, Inc.*, 91 F.R.D. 431, 433 (D. Minn. 1981); *see also Six Mexican Workers v. Arizona Citrus Growers*, 641 F. Supp. 259 (D. Ariz. 1986) (defendants, who had intentionally failed to properly maintain records and who had already been found liable, required to pay costs of notice to individual farm workers whose whereabouts were unknown). Other federal courts have recognized an exception in efficiency. When, for

example, a defendant happens to have compiled a list of putative class members in the ordinary course of its business (thus having already accepted the cost of doing so as a business expense), these courts have affirmed trial court directives that such defendants divulge or otherwise make the list available to plaintiffs. *E.g.*, *Oppenheimer*, 437 U.S. at 358, 57 L. Ed. 2d at 269 ("it may be appropriate to leave the cost where it falls because the task ordered is one that the defendant must perform in any event in the ordinary course of its business"); *Southern Ute Indian Tribe v. Amoco Prod. Co.*, 2 F.3d 1023 (10th Cir. 1993) (quoting *Oppenheimer*); *In re Nissan Motor Corp. Antitrust Litig.*, 552 F.2d 1088, 1101 & n.15 (5th Cir. 1977) (in decisions treating this question, both plaintiffs and defendants have been ordered to compile information necessary to identify absentee class members; whether one party or the other has been designated appears to have turned on which would have the easier task in gathering the information sought). In *Oppenheimer*, the Court even envisioned cases in which the expense involved would be "so insubstantial as not to warrant the effort required to calculate it and shift it to the representative plaintiff." 437 U.S. at 358, 57 L. Ed. 2d at 269. The Court nevertheless "caution[ed] that courts must not stray too far from the principle underlying [*Eisen*, 417 U.S. 156, 40 L. Ed. 2d 732] that the representative plaintiff should bear all costs relating to the sending of notice because it is he who seeks to maintain the suit as a class action." *Id.* at 359, 57 L. Ed. 2d at 270.

Beyond such guidance, however, the touchstone for appellate review of a Rule 23 order, whether it emanates from a federal or a North Carolina court, is to honor the "broad discretion" allowed the trial court in all matters pertaining to class certification, including appointing responsibility for Rule 23 notice. *See generally Crow*, 319 N.C. at 283, 354 S.E.2d at 466 (trial court has "broad discretion in this regard and is not limited to consideration of matters expressly set forth in Rule 23 or in this opinion"); Charles A. Wright, Arthur R. Miller, & Mary K. Kane, *Federal Practice & Procedure* § 1788, at 236 (1986) ("In general . . . the reported cases seem to indicate that the court has great discretion and flexibility in determining what is the best notice practicable under the circumstances and how it is to be given.").

We affirm our general agreement with "the principle . . . that the representative plaintiff should bear all costs relating to the sending of notice because it is he who seeks to maintain the suit as a class action." *Oppenheimer*, 437 U.S. at 359, 57 L. Ed. 2d at 269. But we

**FROST v. MAZDA MOTORS OF AM., INC.**

[353 N.C. 188 (2000)]

note important exceptions to that principle, such as imposing those costs on the defendant as a discovery sanction, *e.g.*, *Six Mexican Workers*, 641 F. Supp. 259, and allowing the trial court the flexibility and discretion to order defendants to shoulder this burden when appropriate under the circumstances of each case. *See Manual for Complex Litigation* at 226-27 ("The problems of notice may be even more critical with classes composed of individual purchasers of goods or services, since sales records may be lacking or be incomplete and unreliable. Creativity is often needed in devising an effective means of notifying class members. On occasion, notice has been distributed with a defendant company's mailings to . . . customers, . . . but such procedures have been questioned, not only because of the administrative burden they can impose but also because of the potential of prejudice to a defendant from having to publicize against itself.").[4]

In the case before us, deference is due the trial court's exercise of discretion in assessing the questions and facts before it regarding certification of plaintiff class. *Crow*, 319 N.C. at 284, 354 S.E.2d at 466; *Maffei v. Alert Cable TV of N.C., Inc.*, 316 N.C. 615, 617, 342 S.E.2d 867, 870 (1986). Generally, "[t]he test for abuse of discretion is whether a decision 'is manifestly unsupported by reason,' *White v. White*, 312 N.C. 770, 777, 324 S.E.2d 829, 833 (1985), or 'so arbitrary that it could not have been the result of a reasoned decision[,] *State v. Wilson*, 313 N.C. 516, 538, 330 S.E.2d 450, 465 (1985).' " *Little v. Penn Ventilator Co.*, 317 N.C. 206, 218, 345 S.E.2d 204, 212 (1986).

If in this case the trial court had ordered defendant simply to make its information available to plaintiff, clearly, this would have been within its discretion under Rule 23. *See, e.g.*, *Oppenheimer*, 437 U.S. at 359, 57 L. Ed. 2d at 270 (court acted within its authority in ordering defendants to direct transfer agent to make records available to plaintiffs, but abused its discretion in requiring defendants to bear $16,000 cost of paying agent to do so); *see also In re Nissan*, 552 F.2d at 1101 n.15 (listing cases in which plaintiffs and defendants have been ordered to compile information necessary to the identification of absentee class members). Given the nearly negligible estimated cost of notice in this case and the court's articulated reason

---

4. "Before such means are approved, class counsel should be required to show either a substantial cost saving, other significant advantages over the use of the mail, or the absence of reasonable alternatives. Any increased administrative costs to the defendant caused by the alternative means of notice should be taken into account." *Manual for Complex Litigation* at 227.

for shifting the cost of notice to defendant—its unique control over the identities of class members—we see no abuse of that discretion here.

In its petition for certiorari, defendant also challenges the class certification order on grounds that the trial court abused its discretion in certifying as a class members whose fraud claims would differ so widely regarding proof of reliance that those claims cannot be adjudicated in a class action. Defendant also calls into question whether plaintiffs, who accepted $34,300 as part of the settlement dismissing all dealership defendants, remained either able to "fairly and adequately insure the representation of the interests of all class members" or free of "conflict of interest [with] class members." *Crow*, 319 N.C. at 282, 354 S.E.2d at 465. We do not address these issues because, as part of the trial court's certification order, they are interlocutory and not immediately appealable.

AFFIRMED.